2013V03641/PWG/JW
CRAIG CARPENITO
UNITED STATES ATTORNEY
BY: PETER W. GAETA
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL: (973) 645-2927
FAX: (973) 297-2042
PETER.GAETA@USDOJ.GOV

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Hon. |
| v. | : | Civil Action No. 19- |
| **$240,431 IN UNITED STATES CURRENTCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| | : | |
| **Defendant *in rem*.** | | |

Plaintiff the United States of America, by its attorney, Craig Carpenito, United States Attorney for the District of New Jersey, for its verified complaint (the "Complaint") alleges, upon information and belief, as follows:

### I. NATURE OF THE ACTION

1. This action is brought by the United States of America seeking the forfeiture of $240,431 in United States currency seized from Danny M. Estevez on or about April 26, 2013 during a motor vehicle stop in Duval County, Florida (hereinafter referred to as the "defendant in rem" or the "defendant currency").

2. The defendant currency is subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6), which subjects to forfeiture all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21, Subchapter I, of the United States Code.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey.

5. The defendant currency is being held on deposit by the United States Marshals Service ("USMS") for the Middle District of Florida in the USMS Seized Asset Deposit Fund account at the Federal Reserve Bank in New York, New York.

## III. FACTS

6. Beginning in or around July of 2011, the Federal Bureau of Investigation ("FBI") initiated an investigation of a Peruvian and Colombian drug trafficking organization ("DTO") operating in Newark, New Jersey, as well as in other domestic and international locations. The DTO was responsible for

shipping large quantities of cocaine, heroin, and crystal methamphetamine into the United States; importing counterfeit U.S. currency from Peru, Colombia, and Mexico to the United States, Canada, and Europe; and the laundering of tens of millions of dollars of drug proceeds from the United States, Canada, and Europe to Mexico, Colombia, and Peru. The DTO was known to utilize numerous methods for the shipment of drugs, to include airplanes, shipping containers, submarines, and international mail courier services. The DTO demonstrated sophisticated methods to launder illegal drug proceeds, to include, "hawalas" and the black market peso exchange.[1] To date, numerous subjects have been identified in the United States, Peru, Colombia, Mexico, and Canada, and approximately twelve international shipments of cocaine and/or crystal methamphetamine, and three international shipments of counterfeit U.S. currency have been seized.

7.    In conducting the investigation of the Peruvian and Colombian DTO, the FBI developed a confidential source (hereinafter referred to as the "CS") that provided substantial assistance against multiple subjects of the Peruvian and Colombian DTO. Due to the CS's cooperation, there have been approximately: three arrests in the United States, three arrests in Europe, the

---

[1] In a black market peso exchange, a narcotics organization hires a broker to exchange U.S. dollars for pesos. To facilitate such an exchange, a broker takes pesos from a Latin American importer (who must convert pesos to dollars to buy U.S. goods), exchanges them for U.S. dollars that were acquired through illegal drug sales in the United States (giving the narcotics organization the pesos it needs), and then pays those dollars to a U.S. exporter on behalf of the importer. A "hawala" is an informal money transfer system that does not involve physical or electronic transfers of funds. Instead, money is paid to a "hawaladar" in one country who then arranges, in turn, for funds located in another country to be paid to a designated recipient.

seizure of one luxury home and eight vehicles valued at over $1,000,000 in Europe, the seizure of approximately 500 kilograms of cocaine in the United States and Europe, the seizure of over $800,000 in counterfeit U.S. currency, the seizure of over $300,000 in narcotics proceeds, the successful nomination of a Consolidated Priority Target ("CPOT," also known as "Kingpin"), and over 1,000 hours of evidentiary recordings, with eight arrests pending in the coming future.

8.  In April 2013, while participating in undercover activities related to the investigation of the Peruvian and Colombian DTO, the CS obtained information that a New Jersey-based drug trafficking organization operated by Danny Estevez ("Estevez") and Christopher DaSilva ("DaSilva") wanted to purchase 20 kilograms of cocaine for a price of $500,000. At the direction of the FBI, the CS conducted a series of recorded meetings and recorded telephone calls with Estevez, DaSilva, and others related to the purchase of the 20 kilograms of cocaine. When possible, all meetings and telephone calls were recorded and physical surveillance was conducted of each meeting by the FBI. The following is a summary of the activities between the CS, Estevez, DaSilva, and others related to the "sting" operation regarding this drug transaction.

9.  In or about April 2013, the CS provided information to the FBI that Estevez and DaSilva, both New Jersey residents, were seeking a new source of supply for cocaine. Estevez and DaSilva were seeking to purchase approximately 20 kilograms of cocaine for their drug trafficking operation in New Jersey.

10. On or about April 21, 2013, the CS conducted a recorded meeting with three subjects, which included Estevez and DaSilva, at a restaurant in Newark, New Jersey in order to solidify negotiations for 20 kilograms of cocaine for their drug trafficking operation in New Jersey. The agreed upon price of each kilogram of cocaine was $25,000 per kilogram for a total of $500,000. Estevez and DaSilva expected the CS to arrange transport of the drugs from Florida to New Jersey. The CS agreed to contact the CS's associates in Florida to determine if the conditions set forth by Estevez and DaSilva were acceptable. As part of the "sting" operation, the CS only purported to have a source of supply of cocaine in Florida.

11. On or about April 23, 2013, a second meeting occurred between the CS and the three subjects, including Estevez and Da Silva, at the same location as the original meeting, in order to continue working on the parameters of the deal. At the beginning of the meeting, Estevez and Da Silva were shown a one-kilogram sample of the cocaine they would be able to buy in Florida. The sample was inside the trunk of a vehicle that drove up to the restaurant. Estevez wanted to test the cocaine at the meeting, but was not allowed to do so because the cocaine already had been sold to another buyer. The display or "flash" of the cocaine to the subjects by the CS was directed and controlled by the FBI. Video surveillance, outside of the restaurant, was conducted by FBI Newark. Estevez was told, in sum and substance, that half of the money ($250,000) needed to be paid in New Jersey prior to the delivery of the 20 kilograms of cocaine. Estevez and DaSilva were reluctant to make the

advanced payment and demanded to inspect the cocaine in Florida prior to making any payment to the CS. The CS stated, in sum and substance, that his Florida associates wanted to be certain that Estevez and DaSilva had the money to make the purchase. Estevez and DaSilva advised the CS, in sum and substance, that they would consider the CS's proposal and then re-contact the CS. Estevez provided his telephone number. At this meeting, a consensus was not reached, but the negotiations remained open.

12. During a telephone call between Estevez and the CS, Estevez stated, in substance and in part: "[he] only wanted to bring $125,000 to Miami to show them they were serious. [Estevez] did not want to pay half of the money upfront ($250,000)." When the CS stated that the suppliers in Miami wanted half of the money first, Estevez stated, in substance and in part: "then there is no way we will reach a deal."

13. On or about April 24, 2013, the CS was then taken to a money and cocaine "stash house" in Hillside, New Jersey. The CS was physically searched by Estevez and Da Silva prior to entering the house to ensure that the CS did not have any hidden recording or electronic devices, then the CS was led into the house where Estevez and Da Silva had approximately $250,000 in U.S. currency on a table. The money was inspected and counted at the meeting, and once the money was counted, Estevez and Da Silva placed the money into plastic bags and then heat-sealed the bags. During this process, DaSilva retrieved what he stated were two kilograms of cocaine from his residence and displayed the two kilograms to the CS. Da Silva stated, in substance and in

part: "we are not playing games and we have the money to purchase the 20 kilos" and asked that the CS contact the suppliers in Miami, Florida, and tell them that Estevez and Da Silva were serious buyers.

14. After the conclusion of this meeting, the CS was advised that Estevez and Da Silva, would personally transport the money from New Jersey to Miami, Florida to meet the CS's associates who had the 20 kilograms of cocaine. After inspecting the cocaine in Miami, Estevez and DaSilva agreed to pay the $250,000 to the suppliers, return to New Jersey, and await the arrival of the 20 kilograms. Upon receipt of the 20 kilograms in New Jersey, Estevez and DaSilva agreed to pay the balance of $250,000.

15. On or about April 26, 2013, in coordination with the FBI, the Florida Highway Patrol ("FHP") conducted a traffic stop of a black 2012 GMG crew cab pickup truck with New Jersey license plate number WLP-10F belonging to Estevez (the "vehicle"), on the southbound lane of Interstate 95, one half-mile north of Emerson Street in Duval County, Florida. The vehicle was stopped for a window tinting violation.

16. Shortly after the stop, other FHP troopers arrived to provide backup. The driver of the vehicle was identified as Estevez, who was riding with two passengers. After Estevez provided his driver's license to the trooper, Estevez reached between the seats. The trooper asked Estevez to please exit the vehicle, to which he complied. The passenger in the front seat provided his New Jersey Driver's license and was identified as Da Silva and the passenger in the back seat also provided his New Jersey driver's license and was identified

as Orlando R. Fajardo, Jr ("Fajardo"). The trooper asked the two passengers also to step out of the vehicle. The trooper asked if there were any guns or knives in the vehicle, to which all occupants responded in the negative.

17. While the trooper was running the individuals' information, the occupants provided conflicting statements about the trip in general and its planning. Subsequently, the trooper who initiated the stop deployed his drug detection canine to conduct an exterior inspection of the vehicle. During the inspection, the trooper's drug detection canine alerted to the passenger side rear window, and Estevez was advised the vehicle was going to be searched.

18. In the passenger compartment of the vehicle, troopers initially located several cellular phones and a radar detector. During further search of the vehicle, a black plastic bag was found behind the bottom of the rear seat containing a large amount of cash in one vacuum-sealed bag. As the troopers continued their search of the vehicle, they found two other vacuum-sealed packages with large amount of cash. Two of the packages were labeled "100,000" in black ink while the third bore no markings. A search of the bed of the vehicle resulted in the discovery of three carry-on type luggage bags. Inside two of the bags, troopers found two Glock semi-automatic pistols commingled with men's clothing.

19. All three individuals were transported to the FHP station for further interview. During the interview, DaSilva and Fajardo claimed no knowledge of the currency and each signed a Florida Highway Patrol Waiver of Claim to Assets Form regarding the currency. Estevez claimed he won the

currency gambling at casinos. Estevez further stated that when he returned home from gambling, he would rubber band his winnings together the way it was found inside the recovered vacuum-sealed bags. Estevez stated during the interview that he was headed to Miami, Florida to party. All three of the subjects were released later that same date.

20. An official count of the currency determined it to be $240,431, the defendant currency.

21. On April 26, 2013, based on the inconsistent statements made by Estevez, Da Silva, and Fajardo, the trooper's drug detection canine alerting to the vehicle, and the manner in which the currency was packaged, the FHP seized the defendant currency from Estevez.

22. Estevez contacted the CS after he was released, and stated that they were stopped by the police due to a window tinting issue. Estevez explained to the CS, in substance and in part: as the police began asking questions, they had a canine go around the vehicle and search the vehicle, upon which the police found and seized the money that Estevez was transporting. Estevez further advised that everyone was let go without being charged with any offenses. Estevez then stated that he was driving back to New Jersey and that they could talk more once he got back.

23. On or about April 30, 2013, the FHP transferred custody of the defendant currency to the FBI.

24. The FBI initiated administrative forfeiture proceedings against the defendant currency. On or about August 29, 2013, Estevez filed a claim of ownership with the FBI contesting the forfeiture of the defendant currency.

25. As the result of the lengthy, large-scale, multi-jurisdictional criminal investigation of the DTO, covering multiple subjects located both in the United States and abroad, between in or about November 2013 and November 2018, the United States District Court for the District of New Jersey granted the government's timely requests for ex parte extensions for the commencement of judicial forfeiture proceedings in this matter. The following district court judges granted the extensions: the Honorable William J. Martini, U.S.D.J., the Honorable Esther Salas, U.S.D.J., the Honorable Susan D. Wigenton, U.S.D.J., the Honorable Claire C. Cecchi, U.S.D.J., the Honorable Kevin McNulty, U.S.D.J., and the Honorable Madeline Cox Arleo, U.S.D.J. The government's deadline for filing the instant Complaint is May 27, 2019.

### IV. CLAIM FOR FORFEITURE

26. The allegations contained in paragraphs 1 through 25 of this Complaint are incorporated herein and made part hereof.

27. As a result of the foregoing, the defendant in rem is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because the defendant in rem constitutes money furnished or intended to be furnished in exchange for a controlled substance or is proceeds traceable to an exchange of moneys or other things of value furnished in exchange for a controlled substance in violation of Title 21, Subchapter I, of the United States Code.

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the defendant in rem pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which the plaintiff will execute upon the defendant in rem pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice of this action be given to all persons who reasonably appear to be potential claimants to the defendant in rem; that the defendant in rem be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court grant such other and further relief it deems just and proper.

Dated: Newark, New Jersey
       May 23, 2019

CRAIG CARPENITO
United States Attorney

*s/ Peter W. Gaeta*
By: PETER W. GAETA
Assistant United States Attorney

## VERIFICATION

STATE OF NEW JERSEY        )
COUNTY OF ESSEX            : ss.:
DISTRICT OF NEW JERSEY     )

Paulo Oliveira, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation; that he has read the foregoing Verified Complaint; and that the statements contained therein are true to the best of his knowledge, information, and belief.

The sources of deponent's information and the grounds of his belief include official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials and representatives during an investigation of alleged violations of Title 21, Subchapter I, of the United States Code.

_____
Paulo Oliveira
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
This 22nd day of May, 2019
at Newark, New Jersey

_____
Jaclyn N. Wyrwas
Attorney-at-Law of the State of New Jersey

2013V03641/PWG/JW
CRAIG CARPENITO
UNITED STATES ATTORNEY
BY: PETER W. GAETA
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL: (973) 645-2927
FAX: (973) 297-2042
PETER.GAETA@USDOJ.GOV

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Hon. |
| Plaintiff, | : | Civil Action No. 19- |
| v. | : | |
| **$240,431 IN UNITED STATES CURRENCY,** | : | **WARRANT FOR ARREST** *IN REM* |
| Defendant *in rem.* | : | |

**TO ANY OFFICER OF THE UNITED STATES DEPARTMENT OF JUSTICE, THE FEDERAL BUREAU OF INVESTIGATION, AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER:**

WHEREAS, a Verified Complaint for Forfeiture *in Rem* has been filed on May 23, 2019 in the United States District Court for the District of New Jersey, alleging that the defendant property, namely $240,431 in United States Currency, is subject to seizure and forfeiture to the United States for the reasons set forth in the Complaint;

WHEREAS, the defendant property is currently in the possession, custody, or control of the United States;

WHEREAS, in these circumstances, Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure (the "Supplemental Rules"), directs the Clerk of the Court to issue a Warrant for Arrest *in Rem* for the defendant property; and

WHEREAS, Rule G(3)(c)(i) of the Supplemental Rules provides that the Warrant for Arrest *in Rem* must be delivered to a person or organization authorized to execute it, who may be an agent with the United States Department of Justice or any other United States officer or employee; someone under contract with the United States; or someone specially appointed by the court for that purpose.

YOU ARE, THEREFORE, HEREBY COMMANDED to take such steps as are necessary to arrest and detain the defendant property, including, if appropriate, serving a copy of this warrant on the custodian in whose possession, custody, or control the property is currently found; and

YOU ARE FURTHER COMMANDED to use whatever means may be appropriate to protect and maintain the defendant property in your custody until further order of this Court.

IN WITNESS WHEREOF, I, the Clerk of the United States District Court for the District of New Jersey, have caused the foregoing Warrant for Arrest *In Rem* to be issued pursuant to Rule G(3)(b)(i) of the Supplemental Rules.

Dated: _____      _____
                                Clerk of the Court

                        By:     _____
                                Deputy Clerk

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
$240,431 in United States Currency

**(b)** County of Residence of First Listed Plaintiff: _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Peter W. Gaeta, Assistant U.S. Attorney
United States Attorney's Office, 970 Broad St., Suite 700
Newark, New Jersey 07102    Tel.: (973) 645-2927

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** |  | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise |  | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
|  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  |  | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. 881(a)

Brief description of cause:
forfeiture action against currency related to a controlled substances violation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 05/23/2019

SIGNATURE OF ATTORNEY OF RECORD: s/Peter W. Gaeta

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE