NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff*, v. **$240,431 IN UNITED STATES CURRENCY,** *Defendant in Rem.* | **Civil Action No. 19-12834** **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff United States of America's (the "Government") motion for the entry of default judgment and final order of forfeiture of a total of $240,431 in United States currency (the "Defendant Property") pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 5. For the reasons set forth herein, the Government's Motion is **GRANTED**.

**I.    BACKGROUND**

This civil in rem asset forfeiture action arises from the Government's investigation into a Peruvian and Colombia drug trafficking organization ("DTO") operating in Newark, New Jersey and other locations across the United States and abroad. Compl. ¶ 6, ECF No. 1. During the DTO investigation, the Federal Bureau of Investigation ("FBI") developed a confidential source ("CS") who provided substantial assistance to the Government against subjects associated with the DTO. Id. ¶ 7. In April 2013, the CS learned that a Newark-based DTO (the "Newark DTO") operated by Danny Estevez ("Estevez") and Christopher DaSilva ("DaSilva") sought to purchase twenty kilograms of cocaine for a price of $500,000. Id. ¶¶ 8-10.

1

At the FBI's direction, the CS conducted a series of recorded meetings and telephone calls with Estevez and DaSilva, among other DTO members, related to the Newark DTO's prospective cocaine purchase. Id. ¶ 8. As part of a sting operation, through those meetings and conversations, the CS negotiated with Estevez and DaSilva to arrange a cocaine transaction between New Jersey and Florida—the purported location of the CS's cocaine supply. See id. ¶¶ 10-11. On or about April 23, 2013, the CS showed Estevez and DaSilva a sample of cocaine the Newark DTO would be able to buy in Florida and told the men they needed to pay half of the money ($250,000) in New Jersey before the cocaine would be delivered. Id. ¶ 11. After some back-and-forth about the money, on April 24, 2013, the CS was taken to a money and cocaine "stash house" in Hillside, New Jersey, where Estevez and DaSilva had approximately $250,000 in United States currency on a table. See id. ¶ 13. After it was counted, Estevez and DaSilva placed the money plastic bags and then heat-sealed bags. Id. The CS was then told that Estevez and DaSilva would personally transport the money from New Jersey to Miami, Florida to meet the CS's associates who had twenty kilograms of cocaine to give in exchange. See id. ¶ 14.

On or about April 26, 2013, in coordination with the FBI, the Florida Highway Patrol ("FHP") conducted a traffic stop of a black 2012 GMC crew cab pickup truck, with a license plate number belonging to Estevez, based on a window-tinting violation. Id. ¶ 15. Other officers arrived at the scene to provide backup. Id. ¶ 16. The officer conducting the stop observed three men in the car: the driver, a front-seat passenger, and a back-seat passenger. See id. ¶¶ 15-17. From the driver's licenses the driver and front-seat passenger provided, the officer identified those individuals as Estevez and DaSilva, respectively. See id. ¶ 16. After giving his driver's license to the officer, Estevez reached between the vehicle's seats, and the officer asked him, DaSilva, and the backseat passenger to exit the vehicle. Id. The occupants provided conflicting statements

about the purpose of their travel and its planning. See id. ¶¶ 17, 21. Accordingly, the officer deployed a drug-detection canine to conduct an exterior inspection of the vehicle, and the canine positively alerted to the passenger side rear window. See id.

The police thereafter searched the vehicle. See id. ¶ 18. Inside, they found several cellular phones, a radar detector, a black plastic bag containing a large amount of money in a vacuum-sealed bag, two other vacuum-sealed packages with large amounts of money, and two Glock semi-automatic pistols. Id. Two of the packages were labeled "100,000" in black ink. Id. An official count determined that the currency totaled $240,431. Id. ¶ 20.

After the search, the officers brought Estevez, DaSilva, and the remaining passenger to the FHP station for further interview. Id. ¶ 19. Estevez claimed he won the currency gambling at casinos and that he was headed to Miami to party. Id. The other two men claimed no knowledge of the money and each signed an FHP Waiver of Claim to Assets Form to that effect. Id. Based on the men's inconsistent statements to the officers during the traffic stop, the drug-detection canine's positive signal to the vehicle, and the manner in which the currency was packaged in the vehicle, the FHP seized the defendant currency. Id. ¶ 21. All three individuals were released later that same day. Id. Estevez thereafter contacted the CS, explaining the details of the traffic stop, including that police asked questions, had a canine go around the vehicle, searched the vehicle, and found and seized the money. Id. ¶ 22. He also told the CS that he was driving back to New Jersey and could talk more once he returned. Id.

On April 30, 2013, the FHP transferred custody of the seized currency to the FBI, and the FBI initiated administrative forfeiture proceedings against it. Id. ¶ 23-24. On August 29, 2013, Estevez filed a claim of ownership with the FBI contesting the forfeiture. Id. Since then, this Court has granted the Government's requests for ex parte extensions for commencing a judicial

forfeiture proceeding based on the Government's large-scale criminal investigation into the DTO, which occurred between November 2013 and November 2018.  Id. ¶ 25.

On May 23, 2019, the Government commenced this civil action for the forfeiture of the Defendant Property by timely filing a Verified Complaint for Forfeiture in Rem.  ECF No. 1; see Compl. ¶ 25.  That same day, a Warrant for Arrest in Rem issued for the Defendant Property (the "Arrest Warrant.").  ECF No. 2.  On May 28, 2019, the Government filed a Notice of Complaint for Forfeiture in Rem with this Court (the "Notice of Complaint").   ECF No. 3.  The Notice of Complaint identified the Defendant Property and stated that any person who asserts an interest in the Defendant Property must file a verified claim with the Clerk of the Court conforming to the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules").  See id.  The Notice of Complaint also indicated that failure to follow the requirements set forth therein could result in default judgment, forfeiture, or other relief demanded in the Verified Complaint.  Id. at 3.

The Government sent copies of the Verified Complaint and the Notice of Complaint to Michael A. Robbins, Esq., in his capacity as counsel for Estevez, and Estevez, in his individual capacity.  Gaeta Decl. ¶ 5, ECF No. 5.1.  It also posted notice of the instant forfeiture action on its official website, http://www.forfeiture.gov, to alert potential claimants to the Defendant Property for thirty consecutive days after filing its Verified Complaint.  Id. ¶ 7 & Ex. B.  No claims or answers were filed in this action, no parties have appeared to contest the action date, and the time period to do so has expired.  Id. ¶ 8.  The Government requested the Clerk enter default on the Defendant Property on August 12, 2019, ECF No. 4, which the Clerk entered on March 5, 2020. On August 12, 2019, the Government filed the instant Motion for Default Judgment.  ECF No. 5.

## II. LEGAL STANDARD

### A. Entry of Default Under Federal Rule of Civil Procedure 55

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter "default judgment against a properly served defendant who fails to file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). While entering default judgment is within the Court's discretion, "entry of default judgment is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008) (internal quotation marks and citation omitted). In deciding whether entry of default is warranted, the Court treats "the factual allegations in the complaint, other than those as to damages . . . as conceded by [the] defendant," DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005), and must decide whether such allegations "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Chanel, 558 F. Supp. 2d at 535.

Several prerequisites must be met before entry of default is appropriate. First, the Court must determine whether it has jurisdiction over the action and the parties, Animal Sci. Prods., Inc., 596 F. Supp. 2d at 848, and whether the moving party properly served the defendant with notice of default, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014). Next, the Court must assess whether the moving party has stated a sufficient cause of action and has proven damages. Chanel, 558 F. Supp. 2d at 536, 538. Finally, after finding that those prerequisites are met, the Court must consider three additional factors: (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Walker v. Pennsylvania, 580 F. App'x 75, 78 (3d Cir. 2014).

## B. Procedural Requirements for Civil Asset Forfeiture Actions

Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value intended to be furnished by any person in exchange for a controlled substance" are subject to forfeiture by the United States. In addition to Rule 55's requirements, <u>in rem</u> forfeiture cases brought under Section 881(a)(6), like the instant matter, are governed by the procedural requirements set forth in Rule G of the Supplemental Rules and 18 U.S.C. § 983. Under the Supplemental Rules, the Government must file a verified complaint stating the grounds for subject matter jurisdiction, <u>in rem</u> jurisdiction over the relevant property, and venue. <u>See</u> Supp. R. G(2). The verified complaint must also describe the relevant property with reasonable particularity, state the property's location when any seizure occurred and its location when the action is filed, identify the statute under which the forfeiture action is brought, and provide sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial. <u>Id.</u>

Pursuant to Supplemental Rule G(3)(b) and (c), the Clerk of the Court "must issue a warrant to arrest the property if it is in the Government's possession, custody, or control" before the government may seize it. The Government must also publish notice of the forfeiture action for any potential claimants of which it is not aware, <u>see</u> Supp. R. G(4)(b), and provide direct notice to any potential known claimants, Supp. R. G(4)(a). With respect to unknown potential claimants, the Government must publish its notice on an official government forfeiture website or publicly elsewhere within a reasonable time after it files its verified complaint, and such notice must remain published for at least thirty consecutive days. <u>See</u> Supp. R. G(4)(a)(iv)(C). For potential claimants known to the Government, the Government must send direct notice of the action and a copy of the

verified complaint "by means reasonably calculated to reach the potential claimant," including to the potential claimant individually and the claimant's attorney.  Id. § (4)(b)(i), (4)(b)(iii).

Claimants seeking to avoid forfeiture must file a claim with the Clerk of the Court that conforms with Supplemental Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(A).  Under Supplemental Rule G(5)(a), the claimant must file a signed claim in the court where the action is pending that identifies the specific property claimed, as well as the claimant and the claimant's interest in the property, and serve the claim on the Government's attorney.  Section 983(a)(4)(A) requires the claimant to file their claim no later than thirty days after the date of service of the Government's verified complaint or after the date of final publication of notice of the verified complaint's filing. 18 U.S.C. § 983(a)(4)(A).

## III. ANALYSIS

Having reviewed the Verified Complaint, Legal Notice, Arrest Warrant, and the Government's moving brief and its attachments, the Court is satisfied that entry of default judgment against the Defendant Property is warranted.

### A. Rule G's and Section 983's Requirements

The Government has met Rule G's and Section 983's procedural requirements for civil asset forfeiture actions.  On May 23, 2019, the Government filed the Verified Complaint, which asserts the Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a) and in rem jurisdiction over the Defendant Property under 28 U.S.C. 1355(b)(1)(A).  Compl. ¶¶ 3-4.  The Government also filed a warrant for the arrest of the Defendant Property.  ECF No. 2.  Both the Verified Complaint and the Arrest Warrant describe the Defendant Property with particularity, namely $240,431 in United States currency, state the location at which it was seized, and identify

21 U.S.C. § 881(a)(6) as the statute under which this action is brought. Id. ¶¶ 1, 15-20; Arrest Warrant at 1.

The Verified Complaint alleges sufficient facts to support a reasonable belief that the Government will be able to meet its burden at trial of proving the Defendant Property constitutes money "furnished or intended to be furnished . . . in exchange for a controlled substance" or represents "proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6). Through the CS, the Government received detailed information about Estevez's plan to purchase cocaine from the CS's confederate in Miami. Estevez showed the CS the money he would give the CS in exchange for the cocaine. When the FHP stopped Estevez's car for a traffic violation, Estevez and his passengers gave conflicting information about the purpose of their trip. In response, the officers deployed a drug-detection canine, which positively alerted to the vehicle, and during their search of the vehicle, the officers found $240,431 in United States currency in vacuum-sealed bags. These facts are sufficient to establish a connection between the currency and the purchase of a controlled substance.

Finally, the Government followed the proper procedures after filing the Verified Complaint to provide notice to potential claimants. Between May 28 and 29, 2019, the Government, which learned that Estevez may have an interest in the Defendant Property, provided direct notice to Estevez and his attorney, Michael A. Robbins, by mailing them each a copy of the Verified Complaint and the Notice of Complaint. See Gaeta Decl. ¶¶ 5-6 & Ex. A, ECF No. 5.1. The Government also published notice of the forfeiture action on its official government website for at least thirty consecutive days through June 27, 2019. Id. ¶ 7 & Ex. B. The Notice of Complaint stated that any person who wished to assert an interest in the Defendant Property must file a verified claim that conforms to Rule G's requirements and explained those requirements. ECF

No. 3. Although Estevez originally made a claim for the Defendant Property to the FHP in 2013, neither Estevez nor his attorney filed a claim or otherwise responded to the Government's Verified Complaint or Notice of Complaint in the instant action. No other potential claimants filed verified claims for the Defendant Property within thirty days after the date of the Government's published notice of its filing of the Verified Complaint.

Based on the foregoing, the Court is satisfied that the Government has met Rule G's requirements, and the time period for filing a verified claim has expired. See 18 U.S.C. § 983(a)(4)(A).

### B. Rule 55's Requirements

The Court also finds that the Government has met Rule 55's requirements and default judgment is appropriate under the circumstances.

Because no potential claimant filed a claim for the Defendant Property within the time period set forth in the Government's notice, entry of default in the Government's favor is appropriate. See United States v. Assorted Various Jewelry Valued at $13,430.00, No. 11-777, 2013 WL 775542, at *2 (D.N.J. Feb. 28, 2013) ("In the absence of a verified claim or a valid answer to the Government's Complaint, the Government is entitled to default judgment pursuant to Fed. R. Civ. P. 55(a).").

In addition, the Walker factors further support entry of default here. First, if the Court declines to enter default, the Government will be prejudiced as "it has no other remedy against the Defendant currency." United States v. $16,010.00 in United States Currency, No. 11-945, 2011 WL 2796338, at *6 (D.N.J. July 13, 2011). Second, the Court cannot consider any defenses by potential owners of the Defendant Property, like Estevez, because they neither filed a claim within the statutorily-mandated timeframe for doing so nor answered the Government's Verified

9

Complaint. See United States v. $25,000 in United States Currency, No. 18-14248, 2019 WL 950180, at *5 (D.N.J. Feb. 27, 2019) ("[I]t is axiomatic that the Court cannot consider any defenses because no claims have been filed asserting a defense."). Third, such a failure to respond, especially with respect to Estevez, appears to be the result of culpable conduct. Although Estevez filed a claim with the FHP for the Defendant Property in 2013, neither he nor his attorney, acting on his behalf, filed a verified claim in response to the Government's Verified Complaint and Notice of Complaint. The record shows that Estevez and his attorney received direct notice of this action. Gaeta Decl. ¶¶ 5-6 & Ex. A. Because the Government provided proper notice to Estevez and unknown potential claimants, those claimants "bear the responsibility for their failure to file a verified claim." United States v. $72,378.00 in United States Currency, No. 15-8425, 2017 WL 6508356, at *5 (D.N.J. Dec. 20, 2017). They did not. The Government has thus satisfied the procedural requirements governing default judgment here. The Court enters default judgment in the Government's favor and orders forfeiture of the Defendant Property.

## IV. CONCLUSION

For the reasons set forth herein, the Government's motion for the entry of default judgment and final order of forfeiture of a total of $240,431 in United States currency is hereby **GRANTED**. No right, title, or interest in the Defendant Property shall exist in any other party. An appropriate Order follows.

Dated: March 11, 2020

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**